29738. WILLIAMS *v.* EMERY STORES COMPANY INC.

DECIDED NOVEMBER 18, 1942.

*George & John L. Westmoreland,* for plaintiff.

*Hirsch, Smith, Kilpatrick, Clay & Cody, E. D. Smith Jr.,* for defendant.

SUTTON, J. A. R. Williams brought suit against Emery Stores Company Inc., alleging in his petition as amended substantially as follows: On or about April 7, 1939, the defendant entered into an agreement with the plaintiff whereby the latter was to be employed by the defendant as manager of its eight retail stores, operated in and near Atlanta, Georgia, at a yearly salary of $5000 plus a commission of one per cent. of the gross retail sales of the said. stores, the agreement being in the form of letters of which copies were attached to the petition as exhibits.

In a letter of March 27, 1939, from the defendant to the plaintiff, which refers to a previous conversation between the parties, it was stated: "As explained before, the warehouse is interested in making 3 % on sales in the stores. Other than this, it is and has been our plan to pass all other profits on to the one in charge of the stores. As to the details as to how to accomplish this result, it is immaterial to us. The writer has the plan in mind as follows and which is in line with your letter of March 25: As soon as you can make arrangements you take charge of the eight Atlanta stores. Billing merchandise for the time being to be exactly as we are handling for all other stores. Salary to be $5000 per year plus 1 % on sales. This is to be continued as long as we are both happy with the arrangement, with the understanding that the stores may be purchased at your option either outright by yourself

or the writer will join you in forming a corporation, the writer to own around 50 % of the stock. As to the exact division, this will be left in your hands. . . It is not probable that you would want to enter into a definite legal contract binding us both in such a way that we would be compelled to go ahead with this arrangement in the event either or both of us were not happy with our relations; however, am sure that you are convinced, as well as ourselves, that if we are happy in the new relation there will be no difficulty whatsoever in working out a very satisfactory plan for both of us. To sum it all up for a few words again, the Emery Stores have only one desire, and that is that our relations shall be happy, that you shall make a profit out of it, and that the Emery Stores Co. will at no time accept more than the 3 % on sales. Am sending both the original and copy of this letter. If you find that this is just about in line with what you have in mind, you may sign the copy and return it to us for our files."

In a letter from the plaintiff to the defendant under date of March 31, 1939, it was stated: "Wish to acknowledge receipt of your plans and feel we have a clear understanding of same. My chief interest is security, and from the nature of your letter there was no note to the contrary.", In a letter from the plaintiff to the defendant under date of April 7, 1939, it was stated: "In accordance with the information and your letter dated March 27, 1939, a copy of which I am returning to you, I am accepting the proposition which you are making me, subject to my final conference with my present employer. . . This acceptance of course is dependent upon my termination of my relations with my present employer, since I must take it up with them, and I will within two weeks advise you of my final decision." On April 10, 1939, the defendant wired the plaintiff: "This confirms your letter April 7th." On the same day the defendant wrote the plaintiff: "Was glad to have your letter today. . . Have just wired you a confirmation of your letter of April 7, so hope that you have used this as a basis to notify your company."

It was alleged that at the time of entering into the contract the plaintiff was employed by W. T. Grant Company in a similar capacity at a yearly salary of $4600 and had been in its employ for sixteen years, and that, after receiving confirmation of the contract from the defendant in the letter dated April 10, 1939, the plaintiff

gave up his job with the W. T. Grant Company at Charlotte, North Carolina, and moved himself and his family at considerable expense to Atlanta, in order that he might enter upon the performance of his duties under the contract with the defendant, and that he did enter· upon the performance of such duties and was employed by the defendant for about two years.

On February 14, 1941, the plaintiff received a letter from the defendant stating that the defendant was not happy in its business relations with the plaintiff, and had determined to terminate the plaintiff's contract of employment, and that the provision of the contract providing for an additional amount of compensation to the plaintiff of one per cent. of the gross sales of said stores was repudiated and would not be paid, and that, since the plaintiff's acceptance of the contract had been dated April 7, 1939, and the salary stipulated was $5000 per year, an amount of $839.02 was tendered as the balance of salary alleged to be due the plaintiff for the year ending April 7, 1941.

The plaintiff, on February 14, 1941, gave written notice to the defendant that he had elected to exercise his option to purchase the defendant's entire interest in its Atlanta group of eight retail stores, and did exercise said option and called upon the defendant to furnish the correct option price for said stores from the books of the defendant in accordance with the option agreement, advising the defendant that he was· ready, willing, and able to pay the said option price in cash in the approximate amount of $60,000, and also requested that the defendant allow him, through his auditors, access to the books of the defendant to ascertain the exact amount due to be paid by him under the option contained in the said contract, which correct amount the plaintiff stood ready to tender if the defendant desired that an actual tender in money should be made. The defendant declined to furnish the plaintiff with the option price, and declined to allow him access to the defendant's books to determine the option price, and by letter to the plaintiff, dated March 1, 1941, denied that it had any valid option agreement with the plaintiff. The defendant, however, did not object to the plaintiff's notice of the exercise of his option and did not require that he tender any actual cash in connection with the notice to the defendant of the plaintiff's exercise of the option.

The plaintiff had obtained the financial backing of a corporation of Charlotte, North Carolina, and this corporation, after inspecting the stores of the defendant which the plaintiff had an option to purchase, agreed to furnish to the plaintiff all necessary cash for the purchase of said stores and to pay to the plaintiff the sum of $10,000 in cash or in stock of the said company of that value upon the plaintiff delivering to the said company the said stores, and, in addition, agreed to employ the plaintiff as its Atlanta manager at a salary of $5000. The petition set forth a description of the said stores, the fixtures and leasehold improvements connected therewith, and alleged that the stock of merchandise which the plaintiff had an option to buy was kept in permanent record form, and that the correct amount for the purchase of the same could be easily arrived at through an inspection of the books by auditors; that the refusal of the defendant to comply with the option agreement and to deliver the entire interests in said stores in accordance with the agreement had resulted in loss and damage to the plaintiff in the sum of $10,000, for which judgment was prayed.

The exception here is to the judgment of the trial court in sustaining the general demurrer of the defendant and dismissing the action. The plaintiff's brief designates the present action, not as one for salary due under the alleged contract, but as one seeking damages for breach by the defendant of the provision of the agreement in respect to an alleged option given the plaintiff to purchase the eight stores of the defendant. The defendant contends that the petition as amended sets forth no cause of action for two reasons: (1) it is shown that the parties never intended to enter into a legally binding contract; (2) the terms of the alleged agreement were too indefinite to be capable of enforcement by any court and, consequently, were not binding.

Assuming, but not deciding, that the alleged contract was a valid one, it is apparent that, though the plaintiff entered upon the performance of his duties and was in the employ of the defendant for nearly two years, the agreement between the parties did not bind the defendant in all events to allow the plaintiff the right to purchase its stores. The chief basis of the alleged agreement is to be found in the letter of the defendant under date of March 27, 1939. The plaintiff, on April 7, 1939, accepted in writing the terms stated by the defendant, subject to his final termination of

employment which he then had in Charlotte, North Carolina, and it is shown that he did resign his position and moved himself and his family to Atlanta and entered upon his duties with the defendant. Among the provisions accepted by the plaintiff was the following: "This [the engagement] is to be continued as long as we are both happy with the arrangement, with the understanding that the stores may be purchased at your option either outright by yourself or the writer will join you in forming a corporation, the writer to own around 50 % of the stock. . . It is not probable that you would want to enter into a definite legal contract binding us both in such a way that we would be compelled to go ahead with this arrangement in the event either or both of us were not happy with our relations." In other words, it was the intent of the agreement that the plaintiff should become manager of the defendant's stores at a stated salary, and that as a concomitant of such employment and during its existence the plaintiff would have a right to purchase the stores of the defendant. Disregarding the question whether or not the details of the exercise of the option were sufficiently definite to be enforceable, it is manifest from the agreement that the right to purchase the stores was not absolute, but would terminate whenever the defendant ceased to be happy with the relations between it and the plaintiff, because the plaintiff had by letter and by his entrance upon his employment accepted the expressed conditions made by the defendant as hereinabove set forth. It appears that, before the plaintiff exercised the alleged option during the period of his employment, the defendant did become dissatisfied or unhappy in its relations with the plaintiff, for, it is alleged that "On February 14, 1941, the plaintiff received a letter from the defendant stating that the defendant was not happy in its business relations with the plaintiff, and had determined to terminate the plaintiff's contract of employment." Under the agreement the defendant had the right to sever its relations with the plaintiff for the reason stated by it, and certainly unless the plaintiff had, before such termination of relations, exercised the alleged option to purchase he could not be said to have been injured by the defendant. In that respect it is alleged that the plaintiff, on February 14, 1941, gave written notice to the defendant that he had elected to exercise his option, etc., but as this allegation follows the one wherein it is alleged that on February 14,

1941, the defendant notified the plaintiff that it was not happy in its business relations with him and was then terminating the contract, but paying the plaintiff salary through April 7, 1941, such allegation of notice of election to exercise the option to purchase must, when construed most strongly against the pleader as must be done on general demurrer, be taken as meaning that the notice was not given the defendant during the existence of employment, which by the defendant's letter above mentioned had been terminated in accordance with the provisions of the contract relied on by the plaintiff. All rights under the contract, if any, including the alleged right to purchase the defendant's stores, having been thus concluded before the plaintiff exercised the option contended for, the petition as amended shows no right of recovery in the plaintiff, and the trial court did not err in sustaining the defendant's general demurrer and dismissing the action.

*Judgment affirmed. Felton, J., concurs specially. Stephens, P. J., dissents.*

FELTON, J. I concur in the judgment, for the reason that there was no definite enforceable agreement as to the option price in the event the option was exercised. The agreement that the "value" of the stock of goods was to be paid is indefinite and uncertain, and there was no way provided to ascertain what value was intended, whether actual value, retail value, cost value, or market value.

STEPHENS, P. J., dissenting. While it may be conceded that no contractual relation existed between the plaintiff and the defendant when the negotiations were broken off between them by the severance of the plaintiff's employment with the defendant, it does appear that the defendant had offered to sell to the plaintiff the stock of goods upon certain terms which could be definitely ascertainable by reference to the books and cost prices, etc., of the goods on hand at the time of the acceptance by the plaintiff of the offer as alleged in paragraph 12 of the petition. See also the letter of March 4, 1940, from the defendant to the plaintiff attached as an exhibit to the petition. I do not concur in the conclusion that the offer of the defendant to sell to the plaintiff was co-extensive with the employment of the plaintiff by the defendant, and terminated ipso facto upon the termination of the employment of the plaintiff by the defendant. In the letter of March 27, 1939, from

the defendant to the plaintiff, which outlines the terms of the arrangements under which the plaintiff came to work for the defendant, it is stated as follows: "As soon as you can make arrangements, you take charge of the eight Atlanta stores. Billing merchandise for the time being to be exactly as we are handling for all other stores. Salary to be $5000 per year plus 1 % on sales. This is to be continued as long as we are both happy with the arrangement, with the understanding that the stores may be purchased at your option either outright by yourself or the writer will join you in forming a corporation, the writer to own around 50 % of the stock. As to the exact division, this will be left in your hands." In the letter it is further stated as follows: "In case you should decide to buy the entire interest of the store, it would necessarily be billed at the value of the stock at the time you bought it. In other words, if $5000 or $10,000 profit had accrued from the time the two of us started the company to the time you bought it over, of course, this profit would be split in proportion to stocks owned. In the event you did buy the entire company, the Emery Stores Co. would continue to bill merchandise at exact delivered cost and would then bill you with 3 % on your gross sales inasmuch as there would be no profit to accrue either to the writer or the company in any way except 3 % on sales." It is further stated in the letter: "It is not probable that you would want to enter into a definite legal contract binding us both in such a way that we would be compelled to go ahead with this arrangement in the event either or both of us were not happy with our relations; however, am sure that you are convinced, as well as ourselves, that if we are happy in the new relation there will be no difficulty whatsoever in working out a very satisfactory plan for both of us."

While this letter does not clearly state what the respective parties proposed to do in every respect, it does clearly give to the plaintiff an option to purchase the property at some ascertainable price. It clearly precludes its being any binding contract between the parties. It states that the arrangement under which the plaintiff was employed was to be continued "as long as we are both happy with the arrangement," and then goes on to say it is the "understanding that the stores may be purchased at" the plaintiff's option. The arrangement referred to, which would continue as long as both parties were "happy" with it, would seem to be the

arrangement as to the employment of the plaintiff by the defendant. It does not appear that the option given to the plaintiff to purchase the property was withdrawn or expired when the plaintiff and defendant ceased to be "happy" with the arrangement. It appears from the allegations that the plaintiff accepted this offer after the termination of the contract of employment, which was on February 14, 1941, and before the offer to sell to the plaintiff was withdrawn, unless the termination of the contract of employment involved a withdrawal of the offer. It appears from the petition that he remained in the defendant's employment until February 14, 1941, at which time the defendant by letter stated that the defendant "was not happy in its business relations with plaintiff and that therefore defendant had determined to terminate plaintiff's contract of employment." This letter, as alleged, had reference only to the termination of the contract of employment, and did not withdraw the defendant's offer to sell the property to the plaintiff. It appears from the correspondence that under the arrangement the plaintiff had obtained security. He had no security unless the defendant's offer to sell remained open after the employment terminated. It therefore would seem that, even after the termination of the employment arrangement between the defendant and the plaintiff, which terminated when either side became unhappy with the arrangement, the defendant's offer to sell to the plaintiff was still an outstanding offer, and that the plaintiff accepted this offer. This offer and acceptance made a contract, since it appears as above indicated that the price which the plaintiff would pay for the stores in the event he exercised the option was definitely ascertainable.

I am therefore of the opinion that the petition set out a cause of action for a breach of contract by the defendant to sell to the plaintiff in accordance with the offer of the defendant, which offer, upon acceptance by the plaintiff under its terms, became a contract with the essential terms thereof definitely ascertainable.